This morning is 25-28 United States v. Petro. Counsel for appellant, if you'd make your appearance and proceed, please. May it please the court. I'm John Gribelius on behalf of Thomas Petro. Your honors, this court has twice held that the prosecution violates the defendant's Fifth Amendment rights when it tells the jurors that the presumption of innocence no longer applies. Yet the prosecution here repeated nearly the same exact argument this court in Starks condemned, calling that argument a serious infringement of the defendant's constitutional rights. However, unlike in Starks, the government made matters worse here by also simultaneously displaying a nude photo of my client in the shower to emphasize its argument. Now on appeal, the government correctly concedes that this is obvious error, at least the negation of my client's presumption of innocence was obvious error. So the only question today really, your honors, is that of prejudice. And the government's closing argument prejudiced my client for three key reasons. First, it exacerbated the error by likening the presumption to clothing that had been removed by each piece of evidence that presented, while also displaying that naked photo of my client. Two, my client's credibility was key to his defense, and the evidence in this case was not overwhelming. And three, the jury instructions did not cure the harm here. Starting with the first, the government's misconduct was not as minimal as it claims on appeal. The government spent as much time undermining the presumption of innocence as the district court ever did explaining it. Now, it told jurors in effect that the presumption had been removed as of the first day of trial when it presented evidence, because every text, every photo had removed the presumption. And so it suggested to jurors that the contested issue of knowledge could essentially be presupposed. Then, of course, having done so, it displayed a naked photo of my client to amplify this argument. Now, your honors, I really do hate cliches, but the cliche a picture is worth a thousand words really aptly suits this case. A picture of errors, is that what you're saying? Yes. Let me go beyond what has been conceded to be clear and obvious error for a moment. I was left breathless. But going beyond that, didn't Mr. Petro tacitly concede that he engaged in sexual communications with M.V. after he knew she was 13? And if he did do that, and my reading of the record was he did do that, then why didn't he admit guilt? And if he did do that, you have a hard time on the prejudice front, don't you? Well, your honor, I want to clarify what your honor is referring to the August 29th texts, which the government argues. And I want to make clear a couple points. First of all, my client never admitted guilt. He never admitted that this was part of his enticement. Okay. Although the government never argued that these August 29th texts were enticement by themselves, and they did that for a very good reason, because it doesn't fit the definition of enticement. The government used these texts below to attack my client's credibility. But if you look at those texts, this court has clearly, but if we re-review the texts, we see that my client did not contrary to what the government says, introduce the sexual innuendo in that conversation or solicit anything out of the blue. What he testified was that at that point, he was terrified, he did not know what to do, and that he was trying to quietly walk out of the relationship. Now, looking at those... Creaming, that's not him introducing sexual innuendo. And I mean, if I look at the language of the Oklahoma statute to engage in any underlying, that's my underscoring, any communication for sexual or purient interest with any minor by use of technology. If you're using technology, you know she's 13, you're talking about creaming. Why is that not sexual innuendo? And why does that not fit the terms of the statute? Well, Your Honor, I have two responses to that. First is that statute says it has to be for that purpose. Now, my client testified that was not his purpose in engaging in that line of texts. And certainly jurors could have believed him. Now, looking at those texts, we see that right after that conversation, my client tries to end the conversation. He says, you know, I'm nodding off or zoning out, however you want it. I can't remember the exact wording, but I'm trying to go to sleep. Now, my client did not introduce the creaming innuendo. What happened was MB and my client were swapping texts, and they were innocuous, and they were about my client dropping out, not responding regularly from the 27th and that's borne out in the Exhibit 5. My client really was dropping out. Now, MB says, you know, I have something else I wanted to say, but I don't know that now is a good time. My client responds to a previous text, noting that, hey, let me know when you're available to talk in the evening, essentially. And then he says, go for it. I could use a pick-me-up before bed, lol. MB then responds with innuendo saying, well, I could pick you up before bed, baby, or not lol. Then she says, and what should I infer from pick-me-up? And what do you think that means? I mean, and who's introducing that concept in that conversation you just talked about? Well, Your Honor, we don't know exactly. I mean, the jurors could infer. The statute says sexual innuendo. I mean, I think, you know, we're all adults here. That sounds pretty good to me. Well, again, Your Honors, the jurors could infer that my client was telling the truth when he wasn't trying to do this for a sexual purpose, that all he was doing was responding to her texts. And again, the government never presented this particular theory of innuendo only, not child pornography, to the jurors. So we can't say that absent this error, jurors would have somehow gone with this theory of guilt that was really never advocated to them in closing argument or at any point during trial. But be that as it may, Your Honors, jurors could certainly credit my client's explanation for what his purpose was, and that was to walk away from this quietly. Because at no point did he expand the conversation after that brief interaction with the innuendo. And I'm not saying that this was appropriate conversation. I want to make that clear. But it wasn't criminal at this point, and jurors could certainly have inferred that based on his testimony. He never then solicited any photos from her. He never amplified or tried to extend the conversation. He simply tried to end it to go to sleep. And that really was the last form of texting he ever did with MB, despite her repeated texts back to him over the next day and a half or so. Counsel, you began your argument by comparing the closing argument in this case to the closing argument in Starks. And I think your point is well received that this one's worse because of the use of the photograph as well. But Starks is a cumulative error opinion. And here you're raising only one error. And so how do we assess, again, the prejudice prong here compared to Starks when Starks had other issues that the court led the court there to reverse and vacate? Well, Your Honor, Starks certainly doesn't set the floor for harm. This court in Starks also noted throughout the opinion that this was the most concerning error, noting that it had actual prejudice. So it treated this really as the primary error. And yeah, we don't have these other But yes, we do have a situation unlike Starks where we have the photo. We also have a case where my client's credibility is central. And the Supreme Court and Taylor in this court in Mahorny noted that when you undermine the presumption of innocence, you're adversely impacting the juror's ability to assess the defendant's credibility. And that's exactly the problem here. And that's why they note that that is particularly a pernicious error in cases where the defendant's credibility is so central. One other question about that. In your brief, you mentioned the prejudice that the burden you have is to show a reasonable probability. And you argue that's a lesser standard than even preponderance of the evidence. And you cite Starks. That's not what Starks says. It just says it's a different standard. It doesn't say it's lesser or more. So how do you view what your burden is here to show that this error affected your client's substantial rights? Well, Your Honor, I do stand by that it is a lesser showing of preponderance. I think that that's partly what it means by different. But we have shown that in this case. There is a reasonable probability that the error undermined my client's or that it affected the outcome in this case. This court has been clear repeatedly that this type of error is highly detrimental in cases where clients' credibility is at issue. And I did note, you know, the evidence isn't overwhelming. And I'll point back to the fact that, again, MB herself testified that she told my client that this was that she wanted to role play as a younger person. And she never walked that back, not even on not even on redirect, as the government contends. She did not walk back that she told my client this was a role that she wanted to role play. What she did on redirect was simply say that when I allegedly told him I was 13, that wasn't role playing, because, well, I was 13. But she didn't say anywhere in redirect that she communicated that to my client, or communicated in such a way that he would have understood that she was breaking character. Your Honors, I just want to briefly shift now to the jury instructions. Obviously, that's been briefed extensively. But I did want to circle back that even had the district court repeatedly instructed the jurors on the burden of proof and the presumption of innocence, and it didn't, contrary to what the government says, it still would not have cured the harm. These instructions were way too generalized to counteract the very specific attack on my client's presumption of innocence. And certainly, this court in Starks rejected the idea that these generalized instructions could do that. And indeed, that's why I think this argument was so effective, is because it was not inconsistent with the jury instructions as given. It allowed the prosecution to do that without jurors even having a chance of knowing that was inconsistent with what the law says. Now, just briefly, Your Honors, one last point. The government notes speed of the verdict shows that this error was harmless. And of course, my position is we can't infer that from the verdict. But I also want to point out, Your Honors, that we know from the record, from the time the jurors selected a foreperson to the time that they reached their verdict was 26 minutes. Now, the jurors in that time were supposed to have read all 20 jury instructions, as Instruction 19 says. And I got to say, as a lawyer, I don't even know that I could do that in 26 minutes. But they had to read all 20 instructions, weigh the evidence, consider the evidence, and then render a verdict all in 26 minutes. That is not a quick verdict. That is a hasty verdict. And that suggests to me that shortcuts were taken, which is not a surprise because the government, in closing argument, told them exactly that, that they could take a shortcut. They did not have to start from zero when they went back there and began their deliberations. They could start anywhere along that continuum between zero and guilty. And that's exactly why this is prejudicial. I'd like to reserve the balance of my time, if I may. Counselor, could I ask one question, please? Of course. Did you, at any point, object to the only instructions being given before any evidence was put in and not before or after your closing arguments? Yes, Your Honor. I did. So I reviewed the instructions, and the court read aloud instruction number one, and then during each break, if the court admonished the jurors at all, it was to tell them not to speak to one another about the case. There was no instruction on burden or presumption in between. I hope I've answered Your Honor's question. You did not object that the instructions were not read following or immediately before the arguments? That is correct, Your Honor. And it's not my position that that itself was error, just that it exacerbated the harm as it did in Starks. Thank you. Good morning, Your Honors. May it please the Court, Lena Olam for the United States. There are three reasons that Starks doesn't govern the outcome of this case. The most important is the overwhelming strength of the evidence against Mr. Petro, that Mr. Petro knew that the person he was communicating with on sexual topics was a minor. Well, who initiated the conversation, counsel? The conversation that took place, the initial, uh, the way they met was initiated by MV. However, as this court made clear... She lied continuously about how old she was, and then we get into this role playing, and we've just got a lot of issues that needed to be aired out before the jury. And I didn't see that happening. Uh, the fact that she initially misstated her age to Mr. Petro and then corrected it was, uh, before the jury, Your Honor. No, she misstated her age at least twice, from 26 and then 18, and then this role playing issue. And there was never any introduction by the government of any of the earlier copies of messages. Yes, Your Honor. The exchanges that took place on the Whisper app, which is designed to maintain the anonymity and secrecy of those communications, were not obtained or introduced by the government. However, the victim testified that she initially told Mr. Petro that she was 26. The 18 only comes in through Mr. Petro's testimony. I don't believe the record reflects that she ever claimed that she was 18. She told him, uh, in that first conversation that she was, uh, 13 years old. And that's the testimony that the jury heard. However, it's important to know... Excuse me, counsel. Stop. Just a minute. That was the issue was, uh, the defendant said that didn't happen. She said it did happen. Now, who makes that decision on credibility? The jury, correct? The jury, Your Honor. All right. And so if something is done to totally negate the, uh, burden of proof and the, and the beyond, the, well, the burden of proof and the credibility, uh, doesn't that hurt that case? An error, uh, the error that took place in saying that, uh, the presumption of innocence had been removed by the evidence did, uh, was a serious error. However, the proof here was nonetheless overwhelming. In particular, it's important to note that under this court's precedent, uh, a defendant may be held liable for enticement, even when the, uh, when a minor proposition, the defendant, or was otherwise eager, predisposed, or willing to engage in the prescribed community, uh, conduct. Well, that's only if you believe what the, what the, uh, alleged victim said. If you don't believe what she said, then it's going to make a big difference. It's not going to be overwhelming. Actually, in, in this court's opinion, in suite, uh, the court found that the evidence in, uh, in an enticement case was overwhelming and, uh, overcame a, uh, prosecutorial misconduct in closing argument because the, uh, the jury heard the victim's testimony, uh, describing the entire course of their relationship, and that testimony was corroborated by digital evidence presented by the, uh, the government. And, uh, and that's the same evidence that was presented here. Although the government was not able to obtain or present the, uh, communications on the Whisper app, the text conversations between the victim and Mr. Petro, uh, uh, 300 some odd, reading those communications corroborates the victim's testimony and, uh, and, uh, undermines the defendant's testimony. Critically here as well, the jury had the opportunity to hear the victim testify and to hear Mr. Petro's attempts to explain away the, uh, the various comments that, uh, that took place in the, those text exchanges. All the more, all more, all the more reason that I need a precise answer to what I understood to be Judge Kelly's line of inquiry, which was, do you accept the notion that this error as it relates to a presumption of innocence can have an undermining effect on how the jury perceives the credibility of the defendant? I think the error could have, uh, an undermining effect on the defendant's case as a whole. However, contrary to what I heard Mr. Gavelius say, I don't think I can answer my question. Answer the precise question. Can it have an undermining effect, not on the case as a whole, but on the specific, specific issue of credibility of the defendant? The cases? No, because neither the Mahorny case nor the Starks case suggests that the impact of the, the prosecutorial error in closing argument went to the credibility of the defendant. The only time the word credibility is used in either of those cases, it is talking about the credibility of the government's witnesses, the credibility of Ms. Avery, which the government vouched for in Starks, the, uh, the credibility of government witnesses in a footnote in Mahorny. Okay, and so if writ large, as it relates to the credibility of other witnesses, credibility can be undermined. If I understand that to be your understanding of Starks, other witnesses, why can't that be the same thing when the key star witness here is the defendant himself? But in neither Starks nor Mahorny is that discussion of credibility in the context of the removal of the presumption of innocence. It's, it goes to the weight of the other evidence and whether that other evidence is substantial enough to overcome the plain error in removing the burden, the presumption of innocence. Here are riddled with comments that suggest that she was a minor talking about mom, talking about all these things. Why in the world could not a jury, why, what about that is overwhelming evidence? Why does that not correlate with the defendant's testimony that she, he understood her to be role playing? Because, and, and, uh, in Starks and in this court's other cases, we take the record as a whole and reading those texts as a whole, all of those references to the victim's age and to her activities that were consistent with that age were not in the context of their sexual communications. They were in the nature of logistical conversations. They were not, she repeatedly talks about when she can talk to him, being constrained by when she has to go to school or do her homework. She talks about being sad to be turning 14. These aren't in the context of, uh, of their sexual interactions. These are logistical conversations. It, uh, I submit to you that it is virtually impossible to read the communications, uh, that take place in, uh, from August 10th to August 29th and conclude that, uh, those references to her age and her life are, are in any way related to sexual role playing. I'll underscore the word virtually there because I'm not sure that I agree with that premise. And, and let me, let me ask this. If in fact the case, the evidence is not overwhelming, do you lose then? I think if we're talking about the record as a whole, uh, perhaps, uh, that, uh, that argument could be made. If we are talking about. Asking you a question, I'm not making an argument. What's the answer to the question? The answer is no, because of the communications that took place on August 29th. And in particular, as, uh, uh, you identified the, uh, Oklahoma statute title 21, uh, section 1040.13a specifically makes it a crime to solicit sexual communications with a minor by use of technology. And the communications that took place on the 29th were sufficient both to prove completed enticement of, uh, based on those communications. And remember, enticement doesn't mean asking for an image. It doesn't mean soliciting something it means to, uh, draw on by arousing hope or desire. Well, what about the defense argument that, well, if that's so such powerful evidence, why didn't the government emphasize that as a theory of guilt? That's what I understand the defense. I would, uh, commend to the court to reread the government's argument because the government absolutely did, uh, uh, reference those August 29th communications as standing alone, uh, sufficient to show that the defendant was guilty of enticement, uh, as well. The jury instructions, uh, the defendant was charged not just with enticement in this case, but with attempted enticement and attempted enticement can be established, uh, by showing the defendant had the requisite intent and that he took a substantial step and it, and a substantial step as defined in these jury instructions and in this court's case law includes, uh, grooming, uh, a victim. And these conversations were nothing but grooming, including the conversations after the defendant admitted he knew she was 13. He continued. Again, the defendant, uh, position as articulated today is that that conversation suggests that he didn't have a purpose to do anything. At least the jury could have found that he did not have a purpose to do anything, but get off that call. And what, what, what about that, uh, is mistaken. So as this court, I think explained in flex, a defendant can deny that he had the requisite intent, but the jury can reject, uh, uh, that argument by looking at the defendant's actions and words in the, uh, in the totality of the communications and conclude and reject his assertion that he did not have the intent to entice and looking at these communications as a whole, there is no way that the jury could read the statement. I could use a pick me up before bed, lol, and believe it referred to anything other than sexual enticement. And at the very least grooming, which would have supported a conviction under the attempted enticement theory. Both of those were available to this jury in the jury instructions. And so based on that August 29th alone, that after which the defendant had admitted that he then knew, uh, that the victim was a minor that communication alone provided this court provides this court with overwhelming evidence to sustain his conviction. However, not just that the defendant's theory that the reason he was starting to pull away in these last few conversations, he claims it's because he learned for the first time it's 13, that she was 13, although she was actually 14 at the time. If you look at the, those communications, particularly on the last few days before the termination of, uh, of these, uh, this exchange, the thing that Mr. Petro learned in those last few days was that the victim was starting to tell others about him. And he expressed repeatedly his anxiety that, uh, others would find out that he needed to keep it a secret at least until she was of age and in communications with her after this, uh, this communication, uh, the, the one that we're talking about, the creaming communication, uh, that was their final conversation on the 29th. Her phone was seized by law enforcement on the 30th. So no, he did not ask you about Starks. Again, I'm going to make two suggestions and get your position on comparing this case to Starks. One is the thread that Judge Kelly began about credibility in Starks, the defendant didn't testify. So that makes this case different because the credibility of the defendant's testimony now is something the jury has to consider. And the other is the comparison of the closing argument. And it's hard to imagine something more prejudicial than these statements in the context of that photograph being shown. So why can't we look at those two or how should we think about those two differences with Starks and weighing this case against that? I think, uh, it's the key and I'll start with the photograph. The photograph absolutely made the error more prejudicial. Uh, the difference between that and Starks though, was that in Starks, there were two separate errors, the vouching for the weak cooperator's evidence and the references to the improperly admitted testimony, uh, expert testimony of the troopers. I see my time is up. May I finish my answer? Um, those, uh, those two errors were separate errors that cumulated with the presumption of innocence error in a way that, uh, required reversal. Here, the photograph was part of the error. It did make that, uh, uh, I acknowledge it made the presumption of error, uh, presumption of innocence error worse, but it wasn't a separate error that could be cumulated to determine that reversal was required. And for that reason, your honors, we would ask that this court affirm Mr. Petro's conviction. Thank you. Your honors. I want to focus on the credibility argument here. This was absolutely a case about credibility. And I want to know, do you disagree? Uh, counsel was pretty adamant that this was a theory of guilt, this creaming conversation and how that in itself was sufficient to support guilt. I understood you to say to the contrary, where, which is it? And what basis in the record do you have for telling me that it's not your honor? When I reread the closing arguments, I understood the government to be saying that these August 29th blew my client's defense out of the water because it made him look incredible. It was not that these alone satisfied this other Oklahoma statute. Now I could be incorrect. I could be mistaken. And I'll certainly go re review the closing, but that was my understanding of the closing argument, that it was only focused on child pornography all throughout the closing argument that my client was essentially asking for and receiving child pornography. That was the focus of the case. And that's my understanding. Again, I could be wrong. I'll double check. But again, this was all about credibility. Even on the August 29th text, my client had an explanation. And absolutely, the Supreme Court has said this affects credibility. Even the defendants, Taylor v Kentucky, when you undermine the presumption of innocence, the risk to the defendants fundamental, having a fundamental fair trial was heightened because the trial essentially was a swearing contest between the victim and the accused. That's Taylor v Kentucky at page 488. That's exactly what we have here. And it makes sense, your honors. If the jurors go into the jury room and they're not presuming that the defendant is innocent, that's going to affect how they're going to assess his testimony from trial. If he wasn't innocent before, why should we believe him now? I'm out of time. Thank you. Counsel. Case submitted. Thank you for your fine arguments.